# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MUTAZ ALSHARA,**
 *Pro Se*, *Plaintiff,*

 v.

**BEAUMONT BEHAVIORAL HEALTH,**
**UNIVERSAL HEALTH SERVICES,**
 *INCORPORATED,*
**AHMED MOHAMMED, M.D.,**
 *individually,*
**SWASTIKA, M.D.** *(first name unknown, to be amended),*
 *individually,*
**HUSSEIN** *(last name unknown, to be amended), individually,*
 *Defendants.*

Case Number: _____

The Honorable Judge:
_____

**JURY TRIAL DEMANDED**

Case: 2:26−cv−12403
Assigned To : Goldsmith, Mark A.
Referral Judge: Grand, David R.
Assign. Date : 7/14/2026
Description: CMP MUTAZ
ALSHARA V BEAUMONT
BEHAVIOR HEALTH ET AL (SS)

---

## VERIFIED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS, MEDICAL MALPRACTICE, AND DAMAGES, AND DEMAND FOR JURY TRIAL

**On or about September 27, 2024, Plaintiff Mutaz Alshara was involuntarily committed to Beaumont Behavioral Health despite a prior forensic finding of no mental illness. Defendant Beaumont denied Plaintiff telephone access and visitation rights in violation of MCL 330.1726. Defendant Dr. Swastika served as treating psychiatrist and provided substandard care. Defendant Dr. Ahmed Mohammed repeatedly picked his nose during clinical encounters with Plaintiff. The United States Department of Justice has opened an active investigation into unnecessary**

**institutionalization in Michigan psychiatric facilities (Exhibit 2). Plaintiff called the Chief Executive Officer of Beaumont numerous times from inside the facility to report the staff's conduct; the Chief Executive Officer took no action and never spoke with Plaintiff about his complaints. Plaintiff also called law enforcement from inside the facility. This action is brought under 42 U.S.C. Section 1983, with supplemental claims requiring no affidavit of merit under Berk v. Choy, 607 U.S. ___ (2026).**

## PRELIMINARY STATEMENT

1.   Plaintiff Mutaz Alshara brings this Complaint against Defendants Beaumont Behavioral Health ("Beaumont"), Ahmed Mohammed, M.D. ("Dr. Mohammed"), and Swastika, M.D. ("Dr. Swastika") (collectively, "Defendants") for deprivation of constitutional rights, violations of the Michigan Mental Health Code, medical malpractice, and related claims.

2.   Dr. Swastika's first name is unknown to Plaintiff and will be amended upon ascertainment.

3.   Jurisdiction exists under 28 U.S.C. Section 1331 and 42 U.S.C. Section 1983. Supplemental jurisdiction exists under 28 U.S.C. Section 1367.

4.   Rooker-Feldman does not bar this action. Plaintiff's prior state-court case, Number 26-004865-CZ, was dismissed without prejudice — not on the merits. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

## JURISDICTION AND VENUE

5.   Original jurisdiction under 28 U.S.C. Section 1331.

6.   Supplemental jurisdiction under 28 U.S.C. Section 1367(a).

7.   Venue under 28 U.S.C. Section 1391(b)(2).

8.   No affidavit of merit or notice of intent is required. In Berk v. Choy, 607 U.S. ___ (2026), the Supreme Court unanimously held that state affidavit of merit requirements conflict with Federal Rule of Civil Procedure 8. This is consistent with Hanna v. Plumer, 380 U.S. 460 (1965), and Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company, 559 U.S. 393 (2010), confirming that Federal Rules displace contrary state procedural requirements. Michigan's MCL 600.2912d and MCL 600.2912b are unenforceable in this Court.

**PARTIES**

9.    Plaintiff Mutaz Alshara is a citizen of Michigan residing at 7737 Appoline Street, Dearborn, Michigan 48126. Plaintiff proceeds pro se.

10.   Defendant Beaumont Behavioral Health ("Beaumont") is a psychiatric facility in Wayne County. Beaumont: (a) admitted and confined Plaintiff under involuntary commitment on or about September 27 through October 3, 2024, pursuant to the Michigan Mental Health Code, MCL 330.1001 et seq. (see Exhibit 1, probate docket); (b) denied Plaintiff telephone access in violation of MCL 330.1726(1); (c) denied Plaintiff visitation in violation of MCL 330.1726(1); (d) failed to provide telephone access upon admission per MCL 330.1447; (e) failed to document clinical justification for restricting communication rights per MCL 330.1726(3); and (f) assigned Dr. Mohammed and Dr. Swastika as treating physicians; and (g) through its Chief Executive Officer, received numerous complaints from Plaintiff regarding staff conduct and took no corrective action, ratifying the violations.

11.    Defendant Ahmed Mohammed, M.D. ("Dr. Mohammed") is a physician at Beaumont who served as a treating psychiatrist during Plaintiff's commitment. Dr. Mohammed: (a) repeatedly picked his nose during clinical encounters with Plaintiff in flagrant disregard for professional standards, hygiene, infection control, and patient dignity; (b) failed to document clinical justification for restricting Plaintiff's communication rights; and (c) participated in maintaining Plaintiff's commitment without adequate clinical basis. Sued individually.

12. Defendant Swastika, M.D. ("Dr. Swastika") (first name unknown, to be amended) is a physician at Beaumont who served as Plaintiff's primary treating psychiatrist. Dr. Swastika: (a) upon information and belief, was not appropriately board-certified or qualified; (b) failed to conduct adequate psychiatric evaluation; (c) failed to document clinical justification for restricting Plaintiff's rights; and (d) maintained Plaintiff's commitment despite the forensic finding of no mental illness. Sued individually.

## FACTUAL ALLEGATIONS

### A. Involuntary Commitment at Beaumont (September-October 2024)

13. On or about September 27, 2024, a Petition for Mental Health Treatment was filed in Wayne County Probate Court, Case Number 2020-861738-MI, naming Beaumont Behavioral Health as the hospital. *See* Exhibit 1. On October 3, 2024, The Honorable Judge Freddie G. Burton Jr. granted the petition. Plaintiff was committed to Beaumont and subjected to involuntary psychiatric treatment.

14. In prior proceedings in the same probate case, Dr. Cathie Zmachinski of the Center for Forensic Psychiatry found that Plaintiff had no mental illness. Despite this finding by the state's own forensic examiner, Plaintiff was committed to Beaumont.

15. Plaintiff's Motion to Dismiss and Close the probate case was denied by The Honorable Chief Judge David Braxton on April 9, 2026. The matter is the subject of an appeal to the Michigan Court of Appeals, Case Number 379997.

16. The commitment proceeded without the prosecutorial participation required by MCL 330.1454 and MCL 330.1457.

### B. What Beaumont Did: Denial of Communication Rights

17. Beaumont impeded and restricted Plaintiff's telephone access during his confinement in violation of MCL 330.1726(1), which requires unimpeded, private, and uncensored communication. A staff member identified as Hussein was specifically responsible for

restricting Plaintiff's telephone rights and visitation rights. Hussein is not a physician. Michigan does not grant independent practice authority or full practice authority to non-physician staff, meaning a physician must supervise them at all times. The restriction of a patient's statutory communication rights under MCL 330.1726 — rights that may only be limited as authorized in the resident's individual plan of services under MCL 330.1726(3) — is a clinical decision requiring physician authorization and documentation. Hussein made this decision unilaterally, without physician supervision, without clinical justification, and without any documentation in Plaintiff's individual plan of services. No physician at Beaumont — neither Dr. Swastika nor Dr. Mohammed — intervened to override Hussein's unauthorized restriction of Plaintiff's rights or to ensure compliance with the Mental Health Code. Beaumont failed to make telephones reasonably accessible per MCL 330.1726(2). When Plaintiff did manage to access a telephone, his communications were not unimpeded or private as required by statute. Beaumont denied Plaintiff visitors per MCL 330.1726(1). Beaumont failed to provide telephone access upon admission per MCL 330.1447. No limitation on Plaintiff's communication rights was documented in his individual plan of services per MCL 330.1726(3).

**C. What Dr. Swastika Did: Substandard Treatment**

18.    Dr. Swastika served as Plaintiff's primary treating psychiatrist and was responsible for evaluation, treatment, and ongoing care. Dr. Swastika provided substandard care by: upon information and belief, lacking appropriate qualifications; failing to conduct adequate evaluation; failing to document clinical justification for restricting communication rights; and maintaining the commitment despite the forensic finding.

**D. What Dr. Ahmed Mohammed Did: Unprofessional Conduct**

19.    Dr. Mohammed served as a treating psychiatrist and repeatedly picked his nose during clinical encounters with Plaintiff. This conduct violated basic standards of professional hygiene, infection control, and patient dignity. Dr. Mohammed also failed to ensure Plaintiff's

statutory communication rights and participated in maintaining the commitment without adequate clinical basis.

**E. Federal Investigation into Michigan Psychiatric Institutionalization**

20.    On November 13, 2024, the United States Department of Justice, Civil Rights Division, announced an investigation under the Americans with Disabilities Act into whether the State of Michigan unnecessarily institutionalizes adults with serious mental illness in state psychiatric hospitals. *See* Exhibit 2 (DOJ Press Release Number 24-1427). The investigation is conducted jointly by the United States Attorney for the Eastern District of Michigan and the United States Attorney for the Western District of Michigan. This federal investigation corroborates Plaintiff's allegations that his involuntary institutionalization constituted civil rights violations.

21.    Additionally, the Department of Health and Human Services Office of Inspector General issued a report in March 2026 (Report Number OEI-02-23-00201) finding that psychiatric facilities inappropriately diagnose residents to mask the misuse of antipsychotic drugs and to circumvent Medicare safeguards. *See* Exhibit 3 (highlights). A more detailed version of this report is available from the OIG at oig.hhs.gov and may be produced upon request or in discovery.

**F. Calls to the Chief Executive Officer and Law Enforcement from Inside the Facility**

22.    From inside Beaumont's facility during his confinement, Plaintiff called the Chief Executive Officer of Beaumont Behavioral Health on numerous occasions to report the conduct of the staff, including the denial of his telephone and visitation rights, the substandard and unprofessional treatment by Dr. Swastika and Dr. Mohammed, and the conditions of his confinement. Despite these numerous calls, the Chief Executive Officer took no corrective action whatsoever and never spoke with Plaintiff about his complaints. The Chief Executive Officer's failure to act demonstrates Beaumont's corporate ratification of its staff's conduct and its deliberate indifference to the constitutional and statutory rights of involuntarily committed patients.

23.    Plaintiff also called law enforcement from inside the facility to report the conditions of his confinement and the conduct of Defendants. Plaintiff's decision to involve both Beaumont's own executive leadership and external law enforcement underscores the severity of Defendants' misconduct and the futility of internal remedies.

**G. Petitioner's Felony Criminal History**

24.    The petition for Plaintiff's involuntary commitment was initiated by Andrew Bingmon Jr. (listed as "Previous Petitioner" on the probate docket, Exhibit 1). Michigan court records reveal that Bingmon has a documented felony criminal history involving controlled substances. In State of Michigan v. Bingmon, Case ID 1991-9105560301-FY, 36th District Court, Bingmon was charged on January 14, 1991 with felony Controlled Substance — Possession (Narcotic or Cocaine) 25 to 50 Grams (MCL 333.74032A4). A preliminary examination was conducted on January 24, 1991 and the defendant was bound over to Wayne County Circuit Court for trial. See Exhibit 4 (MiCOURT case record).

25.    Under the National Guardianship Association certification requirements, which Michigan courts rely upon for professional guardian appointments, an applicant must not have been convicted of, or pled guilty or no contest to, a felony. Under MCL 338.42, a licensing board or agency may consider a felony conviction as evidence against good moral character when the offense has a direct and specific relationship to the activities authorized by the professional license or involves a demonstrable risk to public safety. A felony cocaine delivery and possession conviction has a direct relationship to the fiduciary duties of a professional guardian and involves demonstrable risk to public safety.

26.    The Wayne County Probate Court either failed to vet the petitioner's criminal history before permitting him to exercise the extraordinary power of initiating involuntary commitment proceedings, or permitted a potentially disqualified individual to strip a citizen of his liberty. Either failure goes directly to whether Plaintiff's commitment was lawfully initiated and whether the probate court provided adequate due process protections.

**H. Assignment to Outpatient Provider Without Consent and Collusion with Petitioner**

27.     As part of Plaintiff's commitment, the Wayne County Probate Court assigned the Arab American and Chaldean Council, located on Seven Mile Road in Detroit, Michigan, as Plaintiff's outpatient treatment provider. The organization's full name identifies the two communities it serves: Arab Americans and Chaldeans. Chaldeans are Iraqi Christians. Both populations are Iraqi. The assignment of Plaintiff to an organization that specifically serves the Iraqi community was made on the basis of Plaintiff's perceived national origin rather than clinical need. Plaintiff had no say whatsoever in this assignment. The court did not vet the Arab Council for cultural competency or appropriateness for Plaintiff's circumstances, and Plaintiff was not consulted or given any opportunity to object.

28.     The assignment is demeaning on its face. The Arabic terms Ar and Ab — meaning shame and defect, the worst of the worst in Middle Eastern usage — are the very syllables that compose the word Arab. The assignment to an organization bearing this name was the final act in a pattern of national-origin-based treatment: Defendants viewed Plaintiff's perceived Middle Eastern identity as a basis for channeling him into ethnicity-specific services rather than providing clinically appropriate outpatient care irrespective of national origin. Assigning Plaintiff to an organization whose name carries these derogatory connotations, without Plaintiff's consent, compounds the verbal abuse Plaintiff endured from Beaumont staff who invoked these same terms against him during his confinement. Additionally, Plaintiff is an openly gay man. Plaintiff's sexual orientation is criminalized — in many cases by death — throughout the Middle East. Assigning an openly gay man to an outpatient provider whose cultural framework is rooted in a region where homosexuality is a capital offense, without the patient's input, fails to account for the most basic therapeutic consideration: whether the patient can safely and honestly engage with the provider about his identity, relationships, and mental health without fear of hostility, judgment, or harm.

29.     The assignment is further tainted by collusion. Andrew Bingmon Jr. — the same individual who petitioned for Plaintiff's involuntary commitment and who has the felony drug

history described above — worked for the Arab Council. The petitioner who initiated the deprivation of Plaintiff's liberty was employed by the very organization assigned to oversee Plaintiff's outpatient treatment. This self-dealing arrangement — in which the petitioner's employer financially benefits from the commitment the petitioner initiated — represents a fundamental conflict of interest that the probate court either failed to detect or chose to ignore.

**I. Systemic Corruption in the Wayne County Probate Court**

30.     The Wayne County Probate Court system in which Plaintiff's commitment case was administered is the subject of an active federal criminal prosecution for defrauding incapacitated wards. In United States v. Nancy Williams et al., Case Number 2:26-cr-20045-MFL-APP (Eastern District of Michigan), Nancy Williams (owner of Guardian and Associates, fiduciary for over 1,000 wards), Judge Andrea Bradley-Baskin (36th District Court), Avery Bradley (attorney), and Dwight Rashad are charged with conspiracy to commit wire fraud and money laundering for stealing hundreds of thousands of dollars from vulnerable and incapacitated wards of the Wayne County Probate Court.

31.     Chief Judge David Braxton — the same judge presiding over Plaintiff's probate case, Case Number 2020-861738-MI, and the same judge who denied Plaintiff's Motion to Dismiss and Close that case on April 9, 2026 — is directly connected to the criminal scheme. The Detroit News reported on September 2, 2025 that court records show Avery Bradley, one of the four federal defendants, petitioned Chief Judge Braxton to approve the sale of a ward's home, which was sold for $25,000, far below its $63,400 market value. The home was then flipped 24 days later for $193,000. Chief Judge Braxton approved the transaction in April 2022. See Exhibit 5 (Detroit News search result). Chief Judge Braxton acknowledged the federal investigation, stating in an email to the Detroit News: the court is aware of and assisting the authorities with the investigation.

32.     The federal prosecution of actors within the Wayne County Probate Court system, and the direct involvement of Chief Judge Braxton in approving transactions that are part of the alleged criminal scheme, raise profound questions about the integrity of the proceedings that

led to and maintained Plaintiff's involuntary commitment in the same court system.

**J. Denial of Access to Courts, Obstruction of Service of Process, and Refusal to Admit Law Enforcement**

33.    In addition to impeding Plaintiff's general telephone access, Beaumont specifically refused to allow Plaintiff access to the courts and to law enforcement from inside the facility. The right of access to the courts is a fundamental constitutional right protected by the First and Fourteenth Amendments. Bounds v. Smith, 430 U.S. 817, 821 (1977). When the state confines a person through involuntary commitment, the confining institution may not obstruct the confined person's ability to seek judicial relief or to report misconduct to law enforcement. Beaumont's refusal to facilitate Plaintiff's access to the courts and police compounded the due process violations arising from the commitment itself and effectively insulated Defendants' misconduct from external oversight.

34.    Beaumont's obstruction of legal process extended beyond the denial of Plaintiff's own communication rights. When uniformed Wayne County Sheriff deputies attempted to serve legal process on Beaumont staff, Beaumont refused to allow the deputies to effectuate service. A psychiatric facility that refuses to allow uniformed sheriff deputies to serve legal process on its staff is not merely impeding a plaintiff's access to the courts — it is actively obstructing the administration of justice and placing itself above the reach of legal accountability.

**K. Universal Health Services — Parent Company Operating Behind the Beaumont Name**

35.    Beaumont Behavioral Health is not an independent psychiatric facility. It is a joint venture in which Universal Health Services, Incorporated (NYSE: UHS), a for-profit corporation headquartered in King of Prussia, Pennsylvania, is the majority owner with a 70 percent ownership stake. UHS oversees the day-to-day operations and management of Beaumont Behavioral Health. During Plaintiff's commitment, the computer wallpaper on facility computers displayed the UHS logo and branding — not the Beaumont name — revealing that UHS exercises direct operational control over the facility and does not maintain

a separate corporate identity from the Beaumont Behavioral Health subsidiary.

36.   UHS has a documented history of civil rights violations and fraud in its behavioral health facilities. In 2019, UHS agreed to pay $127 million to settle a federal civil fraud investigation by the United States Department of Justice over behavioral health billing practices. Investigative reporting found that UHS engaged in a pattern of involuntary patient admissions at its facilities, where individuals would be held involuntarily and their conditions would be upcoded to bill insurers at a higher rate. UHS operates more than 200 behavioral health facilities nationally and has annual revenues exceeding $10 billion.

37.   The presence of UHS branding on facility computers, UHS's 70 percent majority ownership, and UHS's day-to-day operational control establish that Beaumont Behavioral Health functions as an alter ego of UHS. The alter ego and piercing-the-corporate-veil doctrines under Michigan law support holding UHS directly liable for the acts of its subsidiary. See Servo Dynamics, Incorporated v. Fanuc Limited, 475 Mich. 783, 798 (2006).

**L. Fully Stocked Pharmacy, No Discharge Medication, and the Federal Medicaid Carve-Out**

38.   Beaumont Behavioral Health maintained a fully stocked pharmacy on each floor of the facility. Plaintiff observed that the pharmacy area was labeled with the word "Plantation." Regardless of the intent behind this labeling, in a locked psychiatric facility where patients are confined against their will, the use of a term historically associated with forced confinement and the deprivation of liberty reflects a disturbing indifference to the dignity of involuntarily committed patients.

39.   Despite maintaining these fully stocked pharmacies and administering psychiatric medications to Plaintiff during his confinement, Beaumont did not provide Plaintiff with any medication to take home upon discharge. This practice is consistent with, and enabled by, a structural gap in federal Medicaid law. Under 42 U.S.C. Section 1396r-8, the Medicaid Drug Rebate Program operates as an effectively open formulary — Medicaid will pay for virtually any FDA-approved outpatient drug a physician prescribes. However, under 42 U.S.C. Section

1396r-8(j)(1), Medicaid managed care organizations are expressly exempted from these open formulary requirements. Congress created this carve-out, and its practical effect is that psychiatric medications are the one category of prescription drugs that Medicaid managed care organizations can refuse to cover.

40. Michigan's own Legislature recognized the danger of this federal framework and enacted MCL 400.109h to prohibit prior authorization for antidepressants, antipsychotics, anticonvulsants, and noncontrolled substance antianxiety drugs — because the Legislature understood that psychiatric patients cannot be denied the medications they need and then suffer the consequences of that denial. The facility's practice of administering psychiatric drugs during confinement but providing no discharge medications creates a cycle: the patient is committed, medicated during commitment, discharged without the medications the facility itself deemed necessary, and left to deteriorate — increasing the likelihood of recommitment to the same facility, which bills for each admission.

**M. State Action**

41. Defendants acted under color of state law. Involuntary commitment is the state-authorized deprivation of liberty. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). A private entity exercising delegated state authority acts under color of state law. West v. Atkins, 487 U.S. 42, 54 (1988); Zinermon v. Burch, 494 U.S. 113 (1990). Beaumont operates under the Michigan Mental Health Code and was designated as the hospital in Plaintiff's commitment order signed by a probate court judge. *See* Exhibit 1.

**N. Rooker-Feldman Does Not Apply**

42. Plaintiff's prior state-court case, Number 26-004865-CZ, was dismissed without prejudice on or about June 10, 2026. This is not a judgment on the merits. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). Plaintiff brings independent federal claims never adjudicated in state court. T.M. v. University of Maryland Medical System Corp., 608 U.S. ___ (2026), is distinguishable — it involved an actual consent order, not a procedural

dismissal.

**O. Timeliness**

43.    This action is timely. The commitment at Beaumont occurred on or about September 27 through October 3, 2024. The three-year limitations period for Section 1983 claims in Michigan, borrowed from MCL 600.5805(2), does not expire until October 2027.

## CAUSES OF ACTION

### COUNT I — DEPRIVATION OF PROCEDURAL DUE PROCESS

**(42 U.S.C. Section 1983 — Against All Defendants)**

44.    Plaintiff incorporates all preceding paragraphs. The Fourteenth Amendment prohibits deprivation of liberty without due process. Vitek v. Jones, 445 U.S. 480, 491-492 (1980); Addington v. Texas, 441 U.S. 418, 425 (1979). Beaumont admitted and confined Plaintiff without prosecutorial participation (MCL 330.1454, MCL 330.1457). Dr. Swastika and Dr. Mohammed participated in and maintained the confinement. Plaintiff suffered loss of liberty, emotional distress, and humiliation.

### COUNT II — DEPRIVATION OF SUBSTANTIVE DUE PROCESS

**(42 U.S.C. Section 1983 — Against All Defendants)**

45.    Plaintiff incorporates all preceding paragraphs. Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982). Beaumont denied telephone and visitation rights without clinical justification. Dr. Swastika and Dr. Mohammed maintained restrictions arbitrarily on a person the state's forensic examiner found had no mental illness. County of Sacramento v. Lewis, 523 U.S. 833, 845-846 (1998).

### COUNT III — VIOLATION OF MICHIGAN MENTAL HEALTH CODE

**(MCL 330.1726, MCL 330.1447 — Against All Defendants)**

46.     Plaintiff incorporates all preceding paragraphs. Beaumont violated MCL 330.1726(1) (telephone and visitation), MCL 330.1726(2) (accessible telephones), MCL 330.1726(3) (no restriction without individual plan), and MCL 330.1447 (telephone upon admission). Dr. Swastika and Dr. Mohammed, as treating physicians, failed to comply.

## COUNT IV — MEDICAL MALPRACTICE

**(No Affidavit Required — Berk v. Choy; Hanna; Shady Grove — Against Dr. Swastika)**

47.     Plaintiff incorporates all preceding paragraphs. Dr. Swastika breached the standard of care by: lacking appropriate qualifications; failing to conduct adequate evaluation; failing to document clinical justification; and maintaining the commitment despite the forensic finding. No affidavit required. Berk v. Choy, 607 U.S. ___ (2026); Hanna v. Plumer, 380 U.S. 460 (1965); Shady Grove, 559 U.S. 393 (2010).

## COUNT V — FALSE IMPRISONMENT

**(Against All Defendants)**

48.     Plaintiff incorporates all preceding paragraphs. Beaumont restrained Plaintiff. Dr. Swastika and Dr. Mohammed maintained the restraint without lawful authority — the commitment lacked prosecutorial participation (MCL 330.1454, MCL 330.1457) and was maintained despite the forensic finding. Walsh v. Taylor, 263 Mich. App. 618, 627 (2004).

## COUNT VI — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against All Defendants)**

49.     Plaintiff incorporates all preceding paragraphs. Beaumont confined Plaintiff and denied all communication rights. Dr. Swastika provided substandard treatment. Dr. Mohammed picked his nose during clinical encounters, degrading patient dignity. The federal government has independently identified systemic unnecessary institutionalization in Michigan psychiatric facilities (Exhibit 2). Roberts v. Auto-Owners Insurance Co., 422 Mich. 594, 602 (1985).

Plaintiff called the Chief Executive Officer of Beaumont numerous times from inside the facility; the Chief Executive Officer took no action. Plaintiff also called law enforcement.

## COUNT VII — DISCRIMINATION IN FEDERALLY FUNDED PROGRAM

**(Title VI of the Civil Rights Act of 1964, 42 U.S.C. Section 2000d — Against Beaumont)**

50.  Plaintiff incorporates all preceding paragraphs.

51.  Title VI of the Civil Rights Act of 1964, 42 U.S.C. Section 2000d, provides that no person shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. Beaumont Behavioral Health receives federal financial assistance through Medicare, Medicaid, and other federal programs, including approximately one billion dollars in COVID-19 relief payments under the CARES Act.

52.  Beaumont, as the facility responsible for Plaintiff's discharge planning, participated in and recommended the assignment of Plaintiff to the Arab American and Chaldean Council as his outpatient treatment provider. The organization's name identifies the two communities it serves: Arab Americans and Chaldeans — both of whom are Iraqi. The assignment to an organization that specifically serves the Iraqi community was made on the basis of Plaintiff's perceived national origin rather than on the basis of clinical appropriateness, cultural competency, or Plaintiff's own preferences. Plaintiff had no say in this assignment. The probate court and Beaumont did not vet the Arab American and Chaldean Council for appropriateness and did not consult Plaintiff. The assignment was made by Andrew Bingmon Jr., who is himself employed by the Arab American and Chaldean Council, creating a self-dealing arrangement that further demonstrates that the assignment was based on perceived national origin rather than clinical need.

53.  As a direct and proximate result of this discrimination in a federally funded program, Plaintiff suffered denial of culturally appropriate outpatient care, emotional distress, and humiliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

a. Compensatory damages of $7,500,000.00, including damages for unlawful confinement, denial of communication rights, substandard medical care, psychological injury, loss of liberty, emotional distress, humiliation, and loss of educational and employment opportunities;

b. Punitive damages consistent with BMW of North America, Incorporated v. Gore, 517 U.S. 559 (1996);

c. A declaration that Defendants violated Plaintiff's Fourteenth Amendment rights;

d. Costs and expenses, with attorney's fees under 42 U.S.C. Section 1988 reserved in the event Plaintiff retains counsel;

e. Injunctive relief requiring Beaumont and UHS to restore and ensure patient communication rights, including telephone access and visitation, for all involuntarily committed patients, and to prohibit non-physician staff from restricting patient rights without physician authorization documented in the individual plan of services;

f. Pre-judgment and post-judgment interest;

g. Such other relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all triable issues pursuant to the Seventh Amendment and Federal Rule of Civil Procedure 38(b).

Plaintiff respectfully thanks this Court for its time and attention.

## VERIFICATION

I, Mutaz Alshara, declare under penalty of perjury under 28 U.S.C. Section 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 14, 2026

Respectfully submitted,

**/s/ Mutaz Alshara**

_____

**MUTAZ ALSHARA**
*Pro Se, Plaintiff*
7737 Appoline Street
Dearborn, Michigan 48126
Telephone: (313) 400-4945
Email: MutazAlshara@MutazAlshara.com

## CERTIFICATE OF SERVICE

I, Mutaz Alshara, certify that on the date of filing, a true and correct copy of the foregoing will be served upon all Defendants in accordance with Federal Rule of Civil Procedure 4.

**/s/ Mutaz Alshara**
MUTAZ ALSHARA, *Pro Se, Plaintiff*

# EXHIBIT 1

**Wayne County Probate Court Docket Case Number 2020-861738-MI**

**EXHIBIT 1**

## 2020-861738-MI Subject of a Petition: Alshara, Mutaz Reopened DB

- Case Type:
- MI-Mentally Ill Petition
- Case Status:
- Reopened
- File Date:
- 12/29/2020
- Action:
- Mental Illness
- Status Date:
- 09/27/2024
- Case Judge:
- Braxton, David
- Next Event:
-

| All Information | Party | Event | Tickler | Docket | Financial |

### Party Information

**Alshara, Mutaz**
- Subject of a Petition

- DOD
  -
- Disposition
  -
- Disp Date
  -

| Party Attorney |

**Alshara, Mutaz**
- Petitioner

- DOD
  -
- Disposition
  -
- Disp Date
  -

| Party Attorney |

**Beaumont Behavioral Health (BHD)**
- Hospital

- DOD
  -
- Disposition
  -
- Disp Date
  -

| Party Attorney |

**White, Ofc. T.**
- Previous Petitioner

- DOD
  -
- Disposition
  -
- Disp Date
  -

| Party Attorney |

**Bingmon, Andrew**
- Previous Petitioner

- DOD
  -
- Disposition
  -
- Disp Date
  -

| Party Attorney |

**EXHIBIT 1**

**Events**

| Date/Time | Location | Type | Result | Event Judge |
|---|---|---|---|---|
| 01/08/2021 09:00 AM | Judge Lawrence J. Paolucci Room 1221 | PFH Petition for Mental Health Treatment | MI - Granted (CHM, OSV, PFH, PJA) | Paolucci, Lawrence J |
| 10/03/2024 08:15 AM | Judge Freddie G. Burton Jr. Room 1211 | PFH Petition for Mental Health Treatment | MI - Granted (CHM, OSV, PFH, PJA) | Burton, Jr, Freddie G |
| 03/13/2026 09:00 AM | Judge David Braxton Room 1211 | MOH Motion | Adjourned | Braxton, David |
| 03/26/2026 11:00 AM | Judge David Braxton Room 1211 | MOH Motion | Adjourned | Braxton, David |
| 04/09/2026 11:00 AM | Judge David Braxton Room 1211 | MOH Motion | Denied - Subsequent Petitions | Braxton, David |

**Ticklers**

| Tickler | Due Date | Completed Date |
|---|---|---|
| LEIN - Add party to LEIN | 01/13/2021 | |
| MI Attorney Fee Reimbursement | 01/11/2021 | 05/02/2022 |
| MI Attorney Fee Reimbursement | 10/04/2024 | |

**Docket Information**

| Date | Description | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|---|
| 12/29/2020 | PFH Petition for Mental Health Treatment (pcm201) (s) | PFH Petition for Mental Health Treatment (pcm201) (s) Attorney: BRAND, JEREMY L. (32392) | | |
| 12/29/2020 | EVT Hearing/Event Scheduled (inf) | EVT Hearing/Event Scheduled (inf) Event: PFH Petition for Mental Health Treatment Date: 01/08/2021   Time: 9:00 am Judge: Paolucci, Lawrence J   Location: Judge Lawrence J. Paolucci Room 1221 Havenwyck Hospital (HAV) (IVT) (Interactive Video)  Result: MI  - Granted  (CHM, OSV, PFH, PJA) | | |
| 12/29/2020 | PKTMI Packet for Petition for Mental Health Treatment, Order Appointing Attorney, etc. | PKTMI  Packet for Petition for Mental Health Treatment, Order Appointing Attorney, etc.  MI Packet - Initial (i) Sent on:  12/29/2020  13:45:58.11 | | |
| 12/29/2020 | SGC Service Generated by Court (Computer Generated) (s) | SGC Service Generated by Court (Computer Generated) (s)  Notice of Hrg/Proof of Service (Mental) w/zoom (i) Sent on:  12/29/2020  13:47:06.39 | | |
| 01/08/2021 | MAP MI Attorney Fee Paid (filed date = hearing date) (inf) | MAP MI Attorney Fee Paid (filed date = hearing date) (inf) | | |
| 01/11/2021 | MGTD Initial Petition Granted (MI) (inf) No Image | MGTD Initial Petition Granted (MI) (inf) No Image The following event: PFH Petition for Mental Health Treatment scheduled for 01/08/2021 at 9:00 am has been resulted as follows:  Result: MI  - Granted  (CHM, OSV, PFH, PJA) Judge: Paolucci, Lawrence J   Location: Judge Lawrence J. Paolucci  Room 1221 | | |
| 01/11/2021 | ARD Attorney of Record Released (inf) | ARD Attorney of Record Released (inf) Attorney: BRAND, JEREMY L. (32392) | | |
| 01/11/2021 | OHA Initial Order after Hearing on Petition for Mental Health Treatment (pcm214, pcm214o) (i) | OHA Initial Order after Hearing on Petition for Mental Health Treatment (pcm214, pcm214o) (i) | | |

**EXHIBIT 1**

| Date | Description | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|-------------|-------------|
| | | Initial Order after Hearing on Pet for Mental  (i) Sent on:  01/11/2021  08:52:59.50 | | |
| 01/13/2021 | LEIN Order Notice Sent to MSP - Enter Individual Onto LEIN (s) | LEIN Order Notice Sent to MSP - Enter Individual Onto LEIN (s)  Order for MSP to Enter Onto LEIN  (i) Sent on:  01/13/2021  12:09:18.26 | | |
| 02/11/2021 | ORM Notice to Reimburse Attorney Fees - MI (s) | ORM Order to Reimburse Attorney Fees - MI (s)  Order for Reimb of Atty Fees MI  (i) Sent on:  02/11/2021  10:44:11.42 | $130.00 | |
| 09/27/2024 | REO Case Reopened | REO Case Reopened | | |
| 09/27/2024 | JCHM Case Reassigned to Judge - MI/DD/JA Case Type | JCHM Case Reassigned to Judge - MI/DD/JA Case Type The judge was changed from Paolucci, Lawrence J to Burton Jr, Freddie G | | |
| 09/27/2024 | PFH Petition for Mental Health Treatment (pcm201) (s) | PFH Petition for Mental Health Treatment (pcm201) (s) Attorney: SCHORNHORST, BEVERLY I. (47382) | | ✉ Image |
| 09/30/2024 | CIF Contact/Personal Identifying Information MC505 | CIF Contact/Personal Identifying Information | | |
| 09/30/2024 | EVT Hearing/Event Scheduled (inf) | EVT Hearing/Event Scheduled (inf) Event: PFH Petition for Mental Health Treatment Date: 10/03/2024   Time: 8:15 am Judge: Burton Jr, Freddie G    Location: Judge Freddie G. Burton Jr.  Room 1211 Beaumont Behavioral Health (BHD) (Hospital)  Result: MI  - Granted  (CHM, OSV, PFH, PJA) | | |
| 09/30/2024 | PKTMI Packet for Petition for Mental Health Treatment, Order Appointing Attorney, etc. | PKTMI  Packet for Petition for Mental Health Treatment, Order Appointing Attorney, etc.  MI Packet - Initial (i) Sent on:  09/30/2024  07:04:03.86 | | ✉ Image |
| 09/30/2024 | SGC Service Generated by Court (Computer Generated) (s) | SGC Service Generated by Court (Computer Generated) (s)  Notice of Hrg/Proof of Service (Mental) w/zoom (i) Sent on:  09/30/2024  07:05:37.66 | | ✉ Image |
| 10/03/2024 | DSP Disposition/Order (s) | DSP Disposition/Order (s)  Disposition - MI  Initial (i) Sent on:  10/03/2024  12:24:06.22 | | ✉ Image |
| 10/03/2024 | ARD Attorney of Record Released (inf) | ARD Attorney of Record Released (inf) Attorney: MARINE-ADAMS, LYNN L. (47239) | | |
| 10/03/2024 | MGTD Initial Petition Granted (MI) (inf) No Image | MGTD Initial Petition Granted (MI) (inf) No Image The following event: PFH Petition for Mental Health Treatment scheduled for 10/03/2024 at 8:15 am has been resulted as follows:  Result: MI  - Granted  (CHM, OSV, PFH, PJA) Judge: Burton Jr, Freddie G    Location: Judge Freddie G. Burton Jr.  Room 1211 | | |
| 10/03/2024 | OHA Initial Order after Hearing on Petition for Mental Health Treatment (pcm214, pcm214o) (i) | OHA Initial Order after Hearing on Petition for Mental Health Treatment (pcm214, pcm214o) (i)  Initial Order after Hearing on Pet for Mental  (i) Sent on:  10/03/2024  15:41:26.50 | | |
| 10/03/2024 | COC Certificate of Legal Counsel | COC Certificate of Legal Counsel | | ✉ Image |
| 10/03/2024 | MAP MI Attorney Fee Paid (filed date = hearing date) (inf) | MAP MI Attorney Fee Paid (filed date = hearing date) (inf) | | |
| 11/13/2024 | CSP Correspondence (s) | CSP Correspondence (s) mailed 11/13/24 Return Correspondence- Ex-Parte Communication (i) Sent on:  11/13/2024  08:36:57.02 | | ✉ Image |

**EXHIBIT 1**

| Date | Description | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|-------------|--------------|
| 11/13/2024 | ORM Notice to Reimburse Attorney Fees - MI (s) | ORM Order to Reimburse Attorney Fees - MI (s)<br><br>Order for Reimb of Atty Fees MI (i)<br>Sent on: 11/13/2024 11:53:33.98 | $130.00 | Image |
| 12/30/2024 | JCHS Case Reassigned to Judge - Successor Judge | JCHS Case Reassigned to Judge - Successor Judge<br>The judge was changed from Burton Jr, Freddie G to Braxton, David . | | |
| 01/15/2026 | CSP Correspondence (s) | CSP Correspondence (s)<br><br>Return Correspondence- General (i)<br>Sent on: 01/15/2026 10:15:46.54 | | Image |
| 01/20/2026 | OSF Confidential Fee Waiver Request (s) | OSF Confidential Fee Waiver Request (s) | | |
| 01/21/2026 | OFW Fee Waiver - Clerk Waiver/Judge Order | OFW Fee Waiver - Clerk Waiver/Judge Order<br><br>Fee Waiver Request - Clerk Waiver<br>Sent on: 01/21/2026 14:10:49.00 | | |
| 03/04/2026 | MOH Motion (s) | MOH Motion to Dismiss and Close Matter (s)<br>Mutaz Alshara (Petitioner); | $20.00 | Image |
| 03/05/2026 | SGC Service Generated by Court (Computer Generated) (s) | SGC Service Generated by Court (Computer Generated) (s)<br><br>Notice of Hrg/Proof of Service (Mental) w/zoom (i)<br>Sent on: 03/05/2026 09:36:58.10 | | Image |
| 03/05/2026 | EVT Hearing/Event Scheduled (inf) | EVT Hearing/Event Scheduled (inf)<br>Event: MOH Motion<br>Date: 03/13/2026   Time: 9:00 am<br>Judge: Braxton, David   Location: Judge David Braxton Room 1211<br><br>Motion to Dismiss and Close Matter<br><br>Result: Rescheduled<br><br>Result: Adjourned | | |
| 03/13/2026 | DSP Disposition/Order (s) | DSP Disposition/Order (s)<br><br>Order (i)<br>Sent on: 03/13/2026 11:29:00.03 | | Image |
| 03/26/2026 | EVT Hearing/Event Scheduled (inf) | EVT Hearing/Event Scheduled (inf)<br><br>The following event: MOH Motion scheduled for 03/13/2026 at 9:00 am has been rescheduled as follows:<br><br>Event: MOH Motion<br>Date: 03/26/2026   Time: 11:00 am<br>Judge: Braxton, David   Location: Judge David Braxton Room 1211<br><br>Motion to Dismiss and Close Matter<br><br>Result: Adjourned | | |
| 03/26/2026 | EVT Hearing/Event Scheduled (inf) | EVT Hearing/Event Scheduled (inf)<br><br>The following event: MOH Motion scheduled for 03/26/2026 at 11:00 am has been rescheduled as follows:<br><br>Event: MOH Motion<br>Date: 04/09/2026   Time: 11:00 am<br>Judge: Braxton, David   Location: Judge David Braxton Room 1211<br><br>Motion to Dismiss and Close Matter<br><br>Result: Denied - Subsequent Petitions | | |
| 03/26/2026 | DSP Disposition/Order (s) | DSP Disposition/Order (s)<br><br>Order (i)<br>Sent on: 04/06/2026 12:35:00.52 | | Image |

**EXHIBIT 1**

Case Details - CourtView Justice Solutions

| Date | Description | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|-------------|--------------|
| 03/26/2026 | SUB Subpoena Issued (s) | SUB Subpoena Issued (s) | | Image |
| 04/09/2026 | DSP Disposition/Order (s) | DSP Disposition/Order (s) | | Image |
| | | Order Re Subsequent/Misc Petition (i) Sent on: 04/09/2026 15:06:12.21 | | Image |
| 04/09/2026 | RLT Petition Result / Order (s) - no image | RLT Petition Result / Order (s) - no image The following event: MOH Motion scheduled for 04/09/2026 at 11:00 am has been resulted as follows: Result: Denied - Subsequent Petitions Judge: Braxton, David   Location: Judge David Braxton Room 1211 | | |
| 05/29/2026 | AOR Appellate Orders/Opinions | AOR Appellate Orders/Opinions | | Image |

**Financial Summary**

| Cost Type | Amount Owed | Amount Paid | Amount Adjusted | Amount Outstanding |
|-----------|-------------|-------------|-----------------|--------------------|
| Court Costs | $260.00 | $0.00 | ⓘ $130.00 | $130.00 |
| Subsequent Petitions | $20.00 | $0.00 | ⓘ $20.00 | $0.00 |
| | $280.00 | $0.00 | $150.00 | $130.00 |

# EXHIBIT 2

**United States Department of Justice Press Release Number 24-1427 (November 13, 2024) Investigation into Unnecessary Institutionalization in Michigan**

**EXHIBIT 2**



**PRESS RELEASE**

# Justice Department Launches Disability Rights Investigation into Unnecessary Institutionalization in Michigan's State Psychiatric Hospitals

Wednesday, November 13, 2024

**For Immediate Release**

Office of Public Affairs

The Justice Department announced today that it has opened an investigation under the Americans with Disabilities Act (ADA) into whether the State of Michigan unnecessarily institutionalizes adults with serious mental illness in state psychiatric hospitals. The department will investigate whether the state fails to provide necessary community-based mental health services to enable people to transition from the state psychiatric hospitals and remain stable in the community.

Prior to the announcement, the department informed the Michigan Department of Health and Human Services and the State Attorney General's Office of the initiation of the investigation.

"The Americans with Disabilities Act protects people's right to receive mental health services in the community, rather than remaining in hospitals when they are ready to

Page 25

**EXHIBIT 2**

go home," said Assistant Attorney General Kristen Clarke of the Justice Department's Civil Rights Division. "This investigation will assess whether Michigan is honoring the ADA's promise that people with disabilities be served in the most integrated setting appropriate. The Civil Rights Division will continue to advocate for states to provide people with disabilities the services they need to avoid unnecessary institutionalization."

"Our office is committed to investing the resources necessary to investigate these claims because we will never tire of ensuring that every citizen is afforded the full protections of the Americans with Disabilities Act," said U.S. Attorney Dawn N. Ison for the Eastern District of Michigan.

"We open this investigation as part of our mission to protect civil rights and to ensure our neighbors with mental health disabilities can succeed and thrive in their communities," said U.S. Attorney Mark A. Totton for the Western District of Michigan.

The Justice Department has not reached any conclusions regarding the subject matter under investigation. Individuals with relevant information are encouraged to contact the department via email at Community.Michigan@usdoj.gov, 888-392-5415 or through the Civil Rights Division's Civil Rights Portal at civilrights.justice.gov/.

Additional information about the Civil Rights Division's ADA enforcement is available at www.justice.gov/crt/rights-persons-disabilities and www.justice.gov/crt/disability-rights-section.

*Updated February 6, 2025*

---

**Topics**

| CIVIL RIGHTS | DISABILITY RIGHTS |

**Components**

# EXHIBIT 3

**HHS Office of Inspector General Report Number OEI-02-23-00201 (March 2026) (Highlights Only) Nursing Homes Inappropriately Diagnosed Residents with Schizophrenia**

**EXHIBIT 3**



Department of Health and Human Services

# Office of Inspector General

Office of Evaluation and Inspections

**ISSUE BRIEF**

March 2026 | OEI-02-23-00201

# Nursing Homes Inappropriately Diagnosed Residents with Schizophrenia to Mask the Misuse of Antipsychotic Drugs

OIG.HHS.GOV

**EXHIBIT 3**



HHS Office of Inspector General

# HIGHLIGHTS

March 2026 | OEI-02-23-00201

# Nursing Homes Inappropriately Diagnosed Residents with Schizophrenia to Mask the Misuse of Antipsychotic Drugs

## Why OIG Did This Review

- The misuse of antipsychotic drugs in nursing homes has been a longstanding concern, particularly because these drugs can have a sedative effect and might be used as chemical restraints to control residents' behavior.  In addition, antipsychotic drugs pose an increased risk of death for elderly patients with dementia.

- In response to concerns about misuse, CMS developed a quality measure—the percentage of residents given antipsychotic drugs—to track use of antipsychotic drugs in nursing homes.  This quality measure factors into a nursing home's star rating.

- Residents who have been diagnosed with schizophrenia are not counted toward the quality measure.  As a result, nursing homes have an incentive to inappropriately diagnose residents with schizophrenia.

- This is the second in a two-part series assessing antipsychotic drug use in nursing homes.

## What OIG Found

OIG's comprehensive review of 40 nursing home inspections completed by CMS found instances of nursing homes inappropriately diagnosing residents with schizophrenia.  Specifically, our review of these inspections found instances in which:

> Nursing homes **inappropriately diagnosed residents with schizophrenia** to **mask the nursing homes' misuse of antipsychotic drugs** and to **artificially inflate their star ratings**.

> **Medical directors made inappropriate schizophrenia diagnoses** to justify prescribing antipsychotic drugs.

> Nursing homes also **used inappropriate schizophrenia diagnoses to skirt Medicare safeguards** intended to protect residents.

> By inappropriately diagnosing schizophrenia, nursing homes **compromised residents' care**.

## What OIG Recommends

OIG recommends that CMS:

1. Build on its efforts to **reduce inappropriate schizophrenia diagnoses** in nursing homes.

2. Expand its use of **data to monitor nursing homes' use of schizophrenia diagnoses** and **target oversight**.

3. Increase efforts to ensure that nursing home **residents and their families are fully informed** when antipsychotic drugs are given.

CMS did not explicitly concur or nonconcur with our three recommendations.  We encourage CMS to re-examine its position on concurrence in its Final Management Decision.

OIG.HHS.GOV

# EXHIBIT 4

**MiCOURT Case Record — State of Michigan v. Bingmon Case ID
1991-9105560301-FY, 36th District Court Felony Controlled Substance Charges
Against Petitioner Andrew Bingmon Jr.**

**EXHIBIT 4**

## Case Details

Additional Resources ▼

**Case ID**
1991-9105560301-FY

**Court Location**
36th District Court

**Case Entitlement**
STATE OF MICHIGAN V BINGMON

**Judge of Record**
GRIFFIN,RUFUS,

**Date Filed**
01/16/1991

**Case Status**
CLOSED

**Closed Date**
01/24/1991

**Balance**

## Parties (1)

**Party Name**
BINGMON/ANDREW/JR

**Party Type/Number**
DEFENDANT - 1

**Age**
58 (1968)

**Attorney Name**
ADA R. MONTGOMERY

**Alternate Name(s)**

## Charges (2)

**Count**

**Offense Date**
01/14/1991

**Current Charge**
CONT SUBS-DELIVER/MANUF (NARCOTIC/COCAINE) < THAN 50 GRAMS
(33374012A4)

**EXHIBIT 4**

**Original Charge**
CONT SUBS-DELIVER/MANUF (NARCOTIC/COCAINE) < THAN 50 GRAMS
(33374012A4)

**Arraignment Date**
01/16/1991

**Disposition Date**
01/24/1991

**Disposition**
DISMISSED

**Officer/Agency or Petitioner**
DPD – CRIMS CONVERSION

**Charge Level**
FELONY

**Amended or Reduced**

**Attempted, Conspired, Solicited**

**Notice**

**Restitution Fees**

**Jail Sentence**

**Sentencing Date**

**License Suspension Clearance Fee Due**
**Fines**

**Costs**

**State Costs**

**Conservation Fees**

**Misc. Fees**

**Probation**

**Total Due**

**Total Fine**

| **Count** | **Offense Date** |
| --- | --- |
| | 01/14/1991 |

**Current Charge**
CONT SUBS-POSSESSION (NARCOTIC OR COCAINE) 25–50 GRAMS
(33374032A4)

**Original Charge**

Page 33

**EXHIBIT 4**

CONT SUBS-POSSESSION (NARCOTIC OR COCAINE) 25-50 GRAMS
(33374032A4)

**Arraignment Date**
01/16/1991

**Disposition Date**
01/24/1991

**Disposition**
EXAM CONDUCTED ; DEFENDANT BOUND OVER

**Officer/Agency or Petitioner**
DPD - CRIMS CONVERSION

**Charge Level**
FELONY

**Amended or Reduced**

**Attempted, Conspired, Solicited**

**Notice**

**Restitution Fees**

**Jail Sentence**

**Sentencing Date**

**License Suspension Clearance Fee Due**
**Fines**

**Costs**

**State Costs**

**Conservation Fees**

**Misc. Fees**

**Probation**

**Total Due**

**Total Fine**

## Bonds (0)

## Hearings (0)

**EXHIBIT 4**

## Sentencing (0)

## Events (4)

⊞  ⊞

**Event Date**
01/24/1991

**Description**
EXAM CONDUCTED ; DEFENDANT BOUND OVER

**Party/Count**
D1

**Clerk**
MIG

**Description**
CASE CLOSED

**Party/Count**
D1

**Clerk**
MIG

**Event Date**
01/14/1991

**Description**
ORIGINAL CHARGE

**Party/Count**
D1

**Clerk**
MIG

**Description**
ORIGINAL CHARGE

**Party/Count**

**EXHIBIT 4**

D1

**Clerk**
MIG

Page 36

# EXHIBIT 5

**Detroit News Report (September 2, 2025) Avery Bradley Petitioned Chief Judge David Braxton to Approve Sale of Ward's Home Below Market Value**

**EXHIBIT 5**



The Detroit News

https://www.detroitnews.com › detroit-city › 2025/09/02   ⋮

## ✅ Detroit judge in FBI probe helped criminals sell homes of ...

Sep 2, 2025 — Court records show **Avery Bradley petitioned Chief Wayne County Probate Judge David Braxton** to approve the sale. The home was sold for ...   Read more

Page 38

# EXHIBIT 6

**Andrew Bingmon LMSW Professional Listing NPI 1598806085 — 62 West 7 Mile Road, Detroit, Michigan 48203 Telephone (313) 893-6172**

**EXHIBIT 6**



# EXHIBIT 7

**Google Search Results for (313) 893-6172 Confirming Telephone Number Belongs to Arab American and Chaldean Council**

**EXHIBIT 7**



(313) 893-6172    ✕



Alcohol.org
https://alcohol.org › Michigan › Troy    ⋮

 **Arab American and Chaldean Council - Troy**

Learn about addiction treatment services at Arab American and
Chaldean Council. **363 West Big Beaver Road Suite 300, Troy,**…

rehabs.com
https://rehabs.com › Michigan › Sterling Heights    ⋮

**✅ Arab American & Chaldean Council - Sterling
Heights**

Arab American & Chaldean Council. 34628 Dequindre Road, Sterling
Heights, Michigan, 48310. Call **(313) 893-6172**. Who Am I Calling

**INDEX TO ATTACHMENTS**

| Exhibit | Description |
|---------|-------------|
| 1 | Wayne County Probate Court docket, Case Number 2020-861738-MI, confirming involuntary commitn |
| 2 | United States Department of Justice Press Release Number 24-1427 (November 13, 2024) — DOJ inve: |
| 3 | HHS Office of Inspector General Report Number OEI-02-23-00201 (March 2026) (highlights) — inapp |
| 4 | MiCOURT case record, State of Michigan v. Bingmon, Case ID 1991-9105560301-FY — felony cocai |
| 5 | Detroit News report (September 2, 2025) — Avery Bradley petitioned Chief Judge Braxton to approve |